**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **DANA CUNNINGHAM**, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**ADVENTIST HEALTH SYSTEM/SUNBELT, INC. D/B/A ADVENTHEALTH**, and **ADVENTHEALTH PRIMARY CARE NETWORK, INC.**,<br><br>Defendants. | Case No.: |

**COLLECTIVE AND CLASS ACTION**
**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Dana Cunningham ("Plaintiff") hereby brings this Collective/Class Action Complaint against Defendants Adventist Health System/Sunbelt, Inc. d/b/a AdventHealth and AdventHealth Primary Care Network, Inc., (collectively, "AdventHealth" or "Defendants") and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants'

willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and common law.

2. Defendants operate a healthcare network consisting of physician practices, hospitals, outpatient clinics, skilled nursing facilities, home health agencies and hospice centers employing more than 100,000 individuals.[1] To provide its services, AdventHealth employed (and continues to employ) numerous customer service representatives and other remote call workers—including Plaintiff and the individuals that make up the putative or potential class. While exact job titles may differ, the employees who worked as remote call workers were subjected to the same or similar illegal pay practices for similar work throughout the United States.

3. Upon information and belief, AdventHealth employs hundreds of people in call-center roles across the United States.

4. AdventHealth used a number of titles, including, but not limited to, Contact Center Rep, Call Center Representative, and Scheduling Agent, to refer to agents that provide support to Defendants' patients, physicians and others (collectively referred to herein as "Agents").

[1] *See Who We Are*, ADVENTHEALTH, https://www.adventhealth.com/locations/hospitals/orlando/who-we-are (last visited Sept. 3, 2026).

5. AdventHealth classified its Agents as non-exempt and tasked them with the primary duty of providing over-the-phone customer service.

6. AdventHealth employed Plaintiff as an hourly call center employee with the job titles of Contact Center Rep, Call Center Representative, and Scheduling Agent.

7. The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendants' hourly call center employees, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

8. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

9. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked,

[2] *See DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA)*, DEP'T OF LABOR (July 2008) https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers.

including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

10. Defendants violated the FLSA and the common law by systematically failing to compensate their Agents for work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they were not logged into Defendants' timekeeping system, which resulted in Agents not being paid for all hours worked, whether at the employee's base rate in non-overtime weeks, or overtime hours worked in weeks where Agents worked at least forty (40) hours.

11. More specifically, Defendants failed to compensate Agents for the substantial time they spent performing activities such as turning on and booting up their computers prior to clocking into Defendants' timekeeping system.

12. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding them unpaid back wages, liquidated damages, attorneys' fees and costs to make them and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendants will not subject future workers to the same illegal conduct in the future.

13. At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendants at any time in the past three years.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

15. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

16. Defendants' annual sales exceed $500,000, and Defendants employ more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendants' Agents engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

17. This Court has general jurisdiction over Defendants because Defendants are headquartered in this District. Moreover, this Court has personal jurisdiction over Defendants as Defendants conduct substantial business in this District, and employ individuals within the state of Florida.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Defendants conducts business in this District.

**PARTIES**

19. Plaintiff Dana Cunningham is a resident of Poinciana, Florida and worked for AdventHealth as a non-exempt Agent in Florida from on or around May 2022 to on or around January 2025. Defendants compensated Plaintiff through the payment of an hourly rate, most recently at $20.13 per hour. Plaintiff signed a consent to join this collective action, which is attached as Exhibit A.

20. Plaintiff's paystubs were issued by Defendant AdventHealth Primary Care Network, Inc., which upon information and belief, is a subsidiary of Defendant Adventist Health System/Sunbelt, Inc.

21. Additional Opt-In Plaintiffs were or are employed by Defendants as Agents during the past three years and their consent forms will also be filed in this case.

22. Defendant Adventist Health System/Sunbelt, Inc. d/b/a AdventHealth is a Florida Not for Profit Corporation with its principal place of business located at 900 Hope Way, Altamonte Springs, Florida 32714. It may

be served via its registered agent, Sylvia R. Adams, at 900 Hope Way, Altamonte Springs, Florida 32714.

23. Defendant AdventHealth Primary Care Network, Inc. is a Florida Not for Profit Corporation with its principal place of business located at 900 Hope Way, Altamonte Springs, Florida 32714. It may be served via its registered agent, Sylvia R. Adams, at 900 Hope Way, Altamonte Springs, Florida 32714.

## GENERAL ALLEGATIONS

24. Prior to hiring prospective Agents, Defendants provided them with a written offer setting forth the job requirements and rate of pay.

25. Defendants maintained documents demonstrating the promised hourly wage for each Agent including, but not limited to: offer letters, paystubs, and/or other payroll records.

26. Plaintiff began her employment with Defendants on or around May 2022, where she received an offer from Defendants to work as an Administrative Assistant. Thereafter, Plaintiff was employed as an Agent for Defendants under various job titles, including “Referrals” and “Prior Authorizations.”

27. On or around November 2023, Plaintiff was transferred to Defendants’ call center, and worked under the job tiles of Contact Center Rep and Call Center Representative.

28. Plaintiff received an offer from Defendants to work as an Agent, and she accepted Defendants' offer with the understanding that the base hourly rate would be paid for all hours worked.

29. Plaintiff performed under her agreement with Defendants by carrying out her job duties and responsibilities. More specifically, Plaintiff performed duties including scheduling primary care appointments for patients and taking messages for doctors and nurses. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

30. Defendants paid their Agents at varying hourly rates.

31. Defendants' Agents, including Plaintiff, typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week. While Defendants have access to all payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek and less than forty (40) hours in a workweek.

32. Defendants provided training to hourly employees on, *inter alia*, how to carry out their day-to-day job duties; how to load and log into their computer programs at the beginning of the day; how to track their time in Defendants' timekeeping system; how attendance would be monitored; call quality expectations; and Defendants' numerous policies and procedures. The

training that Defendants provided to all of their Agents was substantially the same.

33. For purposes of compensation, Defendants' Agents clocked in and out for their shifts on their computers using Defendants' timekeeping applications.

34. At all relevant times, Defendants controlled Plaintiff and all other Agents' work schedules, duties, protocols, applications, assignments, and employment conditions.

35. Defendants required Plaintiff and all other Agents to use high speed internet, a computer, a telephone, and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

36. Defendants' policy required Plaintiff and other similarly situated Agents to be "call ready" the moment their scheduled shifts started, or at other times, to be "call ready" five (5) to seven (7) minutes prior to the start of their shifts. This required Defendants' Agents to perform daily off-the-clock tasks prior to the start of their shifts and before they clocked into Defendants' timekeeping system. During the boot-up and login process, Defendants' Agents sometimes experienced technical difficulties or updates, increasing the amount of off-the-clock work they performed that day.

37. Defendants' Agents necessarily had to perform off-the-clock work every shift because Defendants relied exclusively on a timekeeping system that was accessible only within the computer to track their Agents' hours, including Plaintiff's hours, worked. Therefore, Defendants' Agents were unable to clock in unless and until they performed off-the-clock work before the start of their scheduled shifts and before they could access and log into (and therefore clock into) the program.

38. Defendants enforced their "call ready" policies through its uniform compensation, attendance, and adherence procedures, and the call quality assurance system it used to monitor and grade Agents' calls. For example, Defendants routinely evaluated, and at times disciplined, Agents based on responsiveness, communication, availability, timeliness, attendance, adherence to deadlines, and work quality. Further, Defendants assessed and evaluated their Agents' handling of calls.

39. Defendants' Agents used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Agents' work and Agents could not perform their jobs without them.

40. Defendants' Agents also performed off-the-clock work when returning from lunch and preparing themselves to be call ready the moment their meal periods concluded.

41. Similarly, Defendants' Agents, including Plaintiff, performed work off-the-clock at the end of their scheduled shift, after clocking out of Defendants' timekeeping system, when they shut down/logged out of the programs and applications that they utilized during their shifts.

42. The pre-, mid-, and post-shift off-the-clock time Plaintiff and Defendants' Agents spent booting-up/logging into and shutting down their computer, applications and programs directly benefitted Defendants and was integral and indispensable to the Agents' job responsibilities.

43. As a result of the pre-, mid-, and post-shift off-the-clock work described herein, Plaintiff and other Agents were unlawfully deprived from approximately five (5) minutes to up to twenty seven (27) minutes of compensation every shift.

44. At all relevant times, Defendants were able to track the amount of time Plaintiff and other Agents spent in connection with the pre-, mid-, and post-shift activities; however, Defendants failed to do so and failed to compensate them for the off-the-clock work they performed, thus breaching its agreements with Plaintiff and other Agents.

45. Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendants to establish that it acted in good faith.

46. Despite knowing Plaintiff and all other Agents performed this pre-, mid-, and post-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

47. Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiff and similarly situated Agents booted-up and logged into their computer each shift, along with their clock-in and out times in the timekeeping system.

48. Because Defendants required their Agents, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are inaccurate representations of the total amount of time Agents spent working for Defendants. Thus, the hours reflected on the Agents' paystubs are also inaccurate representations of the hours they actually worked.

**A. Pre-Shift Off-the-Clock Work**

49. The off-the-clock pre-shift process took substantial time, approximately fifteen (15) minutes per shift. Specifically, before each shift, Agents were required to undertake essential work tasks such as:

a. turning on or warming up their computer; waiting for the computer to turn on, and on occasion, download updates;

b. logging into their computer with a username and password;

c. logging into a VPN using a username, password and text authorization code, opening up and logging into Defendants' phone software, and logging into Defendants' database/portal;

d. logging into Defendants' timekeeping system; and

e. clocking in.

All told, Plaintiff and Defendants' Agents were required to open and log into approximately fifteen programs prior to starting their shifts.

50. Defendants' Agents had to complete this process while off-the-clock, before the start of their scheduled shifts and before fielding calls. Consequently, the Agents had to begin working at least fifteen (15) minutes before their scheduled shifts to complete their start-up and log-in activities.

51. Defendants' Agents were not compensated for all of this time because Defendants prohibited and/or prevented Agents from clocking into their timekeeping software before they performed some, if not all, of the pre-shift off-the-clock work.

52. The pre-shift off-the-clock work Agents performed directly benefited Defendants and was integral and indispensable to their job duties and responsibilities as Agents.

## B. Meal-Period Off-the-Clock Work

53. Defendants promised their Agents one thirty (30) minute unpaid meal period and two (2) fifteen-minute break periods during each eight (8) hour shift.

54. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

55. Defendants did not provide Agents with legitimate bona fide meal periods because it required the Agents to return to their computer stations prior to the end of their unpaid meal periods to log back in and place themselves in a "ready" state so they could resume taking calls promptly at the end of their scheduled meal periods.

56. If Agents were not logged back into the phone system and ready to take calls promptly at the conclusion of their scheduled meal or break periods, they were considered out of adherence and could be subjected to disciplinary action.

57. The login process during meal periods was truncated because the Agents' computers were already on and many of the programs that they used during their scheduled shifts remained opened; however, Agents spent approximately five (5) to seven (7) minutes performing this off-the-clock work during their unpaid meal and break periods. Thus, Defendants maintained a common policy and practice pursuant to which it failed to pay Agents for no less than five (5) to seven (7) minutes of work performed during their meal and break periods.

58. The off-the-clock work Plaintiff and other Agents performed during their meal and break periods was compensable, directly benefited Defendants, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Agents' job duties and responsibilities.

59. Defendants' management knew or should have known that Plaintiff and other Agents performed this off-the-clock work, but permitted and even rewarded it through Defendants' schedule adherence metrics.

**C. Post-Shift Off-the-Clock Work**

60. Pursuant to Defendants' policies, training and direction, Plaintiff and similarly situated Agents were required to clock out as soon as their scheduled shift ended or the moment they finished fielding their last call for the day and before shutting down their systems and computer. Plaintiff and other Agents were not allowed to begin the logout and shutdown process until they completed their last fielded call.

61. This resulted in Plaintiff and other Agents performing an additional five (5) minutes of off-the-clock work every shift.

62. The post-shift off-the-clock work Plaintiff and other Agents performed was compensable, directly benefited Defendants and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Agents' job duties and responsibilities.

63. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

**D. The Off-the-Clock Work Results in Viable "Gap Time" Claims**

64. "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for

unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty.*, N.C., 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

65. Plaintiff and all similarly situated Agents regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

66. During the weeks that Agents did not work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices was a deprivation of straight-time wages, in breach of Defendants' agreements with them.

**NATIONWIDE COLLECTIVE ACTION ALLEGATIONS**

67. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former hourly Agents who worked for Defendants at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

68. Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

69. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

70. Consistent with Defendants' policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all regular and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

71. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work Plaintiff and the proposed FLSA Collective performed.

72. Defendants were aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

73. As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members, for all regular hours they worked off-the-clock in non-overtime workweeks;

b. Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

c. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, worked for the benefit of Defendants.

74. Defendants' unlawful conduct was (and is) widespread, repeated, and consistent.

75. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

76. The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are: (1) required to work uncompensated boot up and log out time; and (2) entitled to

their regular hourly wage in non-overtime workweeks, overtime gap time in applicable weeks, and overtime for hours worked over forty (40) in a week.

77. Plaintiff estimates that the FLSA Collective, including both current and former Agents during the relevant period, includes at least hundreds of members. The precise number should be readily available from a review of Defendants' personnel and payroll records.

78. The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## <u>RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS</u>

79. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly Agents who worked for Defendants at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

80. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be

impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

81. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether Defendants failed to keep accurate time and payroll records for Plaintiff and the Rule 23 Nationwide Class;

b. Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

c. Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

d. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

e. Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendants.

82. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same

pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

83. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

84. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

85. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

86. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms

[Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

87. Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## FLSA COLLECTIVE ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME

88. Plaintiff re-alleges and incorporates all previous paragraphs herein.

89. At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

90. At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

91. At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

92. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

93. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

94. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

95. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

96. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

97. At all times relevant to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre-, mid- and post-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where

it occurred, and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

98. The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was significant and not de minimis.

99. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff's and the FLSA Collective's regular hourly rate.

100. As a result of Defendants' unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

101. Defendants' violations of the FLSA were knowing and willful. Defendants could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

102. Plaintiff and all others similarly situated are entitled to back pay as well as liquidated damages in an amount equal to their back pay. As a result of Defendants' FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendants are statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

103. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

104. Plaintiff re-alleges and incorporates all previous paragraphs herein.

105. At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established

(contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendants.

106. Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of their regular business activities.

107. Evidence of these contracts include Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for Agent work, which Plaintiff accepted and performed, but Defendants failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

108. For example, Defendants offered to compensate Plaintiff if she agreed to perform services for Defendants as an Agent. Plaintiff accepted Defendants' offer and performed her duties as an Agent in reliance on the offer.

109. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $20.13 per hour within the applicable period.

110. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs

and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid- and post-shift work described herein.

111. By not paying Plaintiff and every other Rule 23 Nationwide Class member their fixed, pre-agreed upon hourly rate for all of the work they performed each shift in connection with the off-the-clock work described herein, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

112. Defendants can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

113. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

114. Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members

spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

115. As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

116. Plaintiff re-alleges and incorporates all previous paragraphs herein.

117. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

118. At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendants' benefit.

119. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

120. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

121. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

122. Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom. Despite this, Defendants did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

123. Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

124. Defendants were unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

125. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

126. As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

c. An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class Counsel for the same;

e. An Order declaring that Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. An Order declaring that Defendants' violations of the FLSA were willful;

g. An Order declaring that Defendants breached their contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendants were unjustly enriched) by failing to pay them for mandatory pre-, mid-, and post-shift work activities described herein at a pre-established (contractual) regular hourly rate;

h. An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collective, and the Rule 23 Nationwide Class the full amount of damages, liquidated damages, and punitive damages available by law;

i. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as provided by statute;

j. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k. An Order awarding such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff Dana Cunningham, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: September 28, 2026

Respectfully Submitted,

/s/ Bradley W. Butcher
Bradley W. Butcher (FBN 0020045)
The Dorcey Law Firm
10181 Six Mile Parkway, Suite C
Fort Myers, FL 33966
Telephone: 239-322-1651
bbutcher@dorceylaw.com

Mark R. Miller
Julia A. Ozello
**Wallace Miller**
200 W. Madison St., Suite 3400
Chicago, IL 60606
Telephone : 312-261-6193
mrm@wallacemiller.com
jo@wallacemiller.com

*Attorneys for Plaintiff and the Putative Class/Collective Action Members*